**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| DOUGLAS STOWE, Individually, and STEPHANIE JACKSON as Guardian and Next Friend of WYATT STOWE, a Minor Child, § § § § § § § § § § § § § § § § § § § Plaintiffs, v. DAVID A. RUSSELL, D.C., RV ENTERPRISES, P.C., Individually and d/b/a RUSSELL CHIROPRACTIC, COLUMBIA MEDICAL CENTER OF MCKINNEY, SUBSIDIARY, L.P., d/b/a MEDICAL CENTER OF MCKINNEY, WILLIAM T. HARTMAN, D.O., VUDHI V. SLABISAK, M.D., and NORTH TEXAS ORTHOPAEDIC & SPINE, P.A., Defendants. | Case No. 4:07-CV-328 |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTIONS TO DISMISS**

The following motions are pending before the court:

1. Defendants Vudhi V. Slabisak, M.D. and North Texas Orthopaedic & Spine, P.A.'s dispositive Rule 12 motion to dismiss and, subject thereto, motion to transfer venue (docket entry #29); and

2. Plaintiffs' response in opposition to Defendant Vudhi V. Slabisak, M.D. and North Texas Orthopaedic & Spine, P.A.'s Rule 12 motion to dismiss (docket entry #34).

---

1. Defendant Medical Center of McKinney's dispositive Rule 12b motion to dismiss (docket entry #35);

2. Plaintiffs' response to Defendant's Medical Center of McKinney's dispositive Rule

        12(b) motion to dismiss (docket entry #37);

3.      Defendant Medical Center of McKinney's reply to Plaintiffs' response to Defendant's 12b motion to dismiss (docket entry #39); and

4.      Plaintiffs' sur-reply to Defendant Medical Center of McKinney's dispositive Rule 12(b) motion to dismiss (docket entry #40).

Having considered the motions to dismiss, the court finds that the same should be denied.

## BACKGROUND

On March 17, 2005, the Plaintiff ("Stowe"), apparently experiencing pain, visited the emergency room at the Medical Center of McKinney ("the Medical Center"). PL. SECOND AMD. COMPL., p. 5, ¶ 3.08. Stowe was diagnosed with a right knee sprain. *Id*. On March 23, 2005, Stowe, now experiencing back pain, sought treatment from David Russell ("Russell"), a chiropractor who had previously treated him. *Id*. After Russell performed drop table and electrical stimulation treatments, Stowe lost his ability to move his right leg and to walk. *Id*. at pp. 5-6. Russell subsequently directed Stowe to the emergency room. *Id*. at p. 6.

Stowe arrived at the emergency room at the Medical Center at approximately 5:40 p.m. *Id*. at p. 6, ¶ 3.09. Dr. William Hartman ("Hartman") noted that Stowe was experiencing pain in his back and that Stowe could neither move his right leg or walk. *Id*. A CT scan of Stowe's lumbar spine revealed severe stenosis of $L_{4-5}$ and narrowing at $L_5 - S_1$. *Id*. Stowe was discharged from the Medical Center, with orders to see an orthopedic surgeon the following morning. *Id*. at ¶ 3.10.

By the time Stowe visited with Dr. Vudhi Slabisak ("Slabisak"), the orthopedic surgeon, as instructed, Stowe experienced a marked worsening of his paralysis. *Id*. at p. 7, ¶ 3.11. Slabisak sent Stowe back to the Medical Center to be admitted. *Id*. By March 26, 2005, Stowe suffered bowel incontinence; as such, a thoracic MRI was ordered. *Id*. On March 27, 2005, Slabisak performed a

decompressive laminectomy. *Id*. On March 28, 2005, Stowe underwent a second surgical procedure. *Id*. However, Stowe's spinal cord function did not return. *Id*. On April 12, 2005, Stowe was transferred to HealthSouth for in-patient rehabilitation. *Id*. Stowe remained at HealthSouth until May 17, 2005. *Id*. Stowe is a permanent $T_{12}$ paraplegic, suffering bladder and bowel incontinence. *Id*.

The Plaintiffs contend that the Medical Center was aware that Stowe was uninsured. *Id*. at p. 6, ¶ 3.10. The Plaintiffs allege that the Medical Center was aware of Stowe's inability to pay when it failed to perform an appropriate medical screening, *i.e.*, x-rays or an MRI of Stowe's thoracic spine, when Stowe first presented to the emergency room. *Id*. at p. 6, ¶¶ 3.09-3.10; p. 10, ¶ 4.10. The Plaintiffs contend that the Medical Center failed to offer Stowe the same screening that it would have offered any other patient in a similar condition, presenting with similar symptoms. *Id*. at ¶ 4.10.

Additionally, the Plaintiffs allege that the Medical Center was aware of Stowe's inability to pay when it discharged Stowe from the emergency room. *Id*. at p. 6, ¶ 3.10. The Plaintiffs contend that the Medical Center had actual knowledge of Stowe's emergency medical condition but failed to either stabilize Stowe's condition or transfer Stowe to another hospital. *Id*. at p. 9, ¶ 4.09. The Plaintiffs allege that at the time of Stowe's discharge, Stowe's "condition constituted an emergency medical condition manifesting itself by recent onset of paralysis such that in the absence of immediate medical attention it could be expected to, and did actually result in serious and permanent impairment of his bodily functions and serious and permanent dysfunction of his lower limbs." *Id*. at p. 10, ¶ 4.09.

The Plaintiffs allege that the above resulted in violations of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §§ 1395dd, *et seq*. ("EMTALA"). *Id*. at p. 9, ¶ 4.08.

The Plaintiffs contend that pursuant to EMTALA, Hartman, Slabisak and the nursing staff were employees and/or agents of the Medical Center. *Id*. As such, the Plaintiffs have pled both an EMTALA cause of action as well as a negligence cause of action against the Defendants herein.

### LEGAL STANDARD

The Defendants have filed motions to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Additionally, the Defendants filed motions to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). However, dismissal for failure to state a claim does not require the appearance that, beyond a doubt, the plaintiff can prove ***no set of facts*** in support of his claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007). Rather, to survive a 12(b)(6) motion to dismiss, a plaintiff must show, after adequately stating his claim, that it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

Although a district court may not go outside the complaint, the Fifth Circuit has recognized one limited exception. *Scanlan v. Texas A & M University*, 343 F.3d 533, 536 (5th Cir. 2003). A district court may consider documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id*., citing *Collins v. Morgan*

*Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

### DISCUSSION AND ANALYSIS

"[EMTALA] was not intended to be used as a federal malpractice statute, but instead was enacted to prevent 'patient dumping', which is the practice of refusing to treat patients who are unable to pay." *Marshall v. East Carroll Parish Hosp. Service District*, 134 F.3d 319, 322 (5th Cir. 1998). "The act requires that participating hospitals give the following care to an individual who is presented for emergency medical care: (1) an appropriate medical screening, (2) stabilization of a known emergency medical condition, and (3) restrictions on transfer of an unstabilized individual to another medical facility." *Battle ex rel. Battle v. Memorial Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000), citing 42 U.S.C. § 1395dd(a)-(c).

"An appropriate medical screening examination is determined 'by whether it was performed equitably in comparison to other patients with similar symptoms,' not 'by its proficiency in accurately diagnosing the patient's illness.'" *Id.*, quoting *Marshall*, 134 F.3d at 322. "A hospital's liability under EMTALA is not based on whether the physician misdiagnosed the medical condition or failed to adhere to the appropriate standard of care." *Id.*, citing *Marshall*, 134 F.3d at 322. "Instead, the plaintiff must show that the hospital treated him differently from other patients with similar symptoms." *Id.*, citing *Marshall*, 134 F.3d at 324.

Additionally, "EMTALA requires stabilization of a known emergency medical condition." *Id.* at 558, citing 42 U.S.C. § 1395dd(b)(1). "The duty to stabilize does not arise unless the hospital has actual knowledge that the patient has an unstabilized medical emergency." *Id.*, citing *Marshall*, 134 F.3d at 325. EMTALA defines "emergency medical condition" as follows:

**(A)**   a medical condition manifesting itself by acute symptoms of sufficient

      severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in –

      **(i)**    placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,

      **(ii)**    serious impairment to bodily functions, or

      **(iii)**    serious dysfunction of any bodily organ or part[.]

42 U.S.C. § 1395dd(e)(1)(A); *see also Battle ex rel. Battle*, 228 F.3d at 558.

      "If the hospital has actual knowledge of the emergency medical condition, it must then provide either 'within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or for transfer of the individual to another medical facility . . . .'" *Battle ex rel. Battle*, 228 F.3d at 558-59, quoting 42 U.S.C. § 1395dd(b)(1)(A) & (B). "Under EMTALA, 'to stabilize' means 'to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility . . . .'" *Id*. at 559, quoting 42 U.S.C. § 1395dd(e)(3)(A). According to the Fifth Circuit, "to stabilize" means "'[t]reatment that medical experts agree would prevent the threatening and severe consequence of' the patient's emergency medical condition while in transit." *Id*., quoting *Burditt v. United States Dep't of Health & Human Servs.*, 934 F.2d 1362, 1369 (5th Cir. 1991).

      Accepting as true all the well-pleaded facts contained in the Plaintiffs' second amended complaint and viewing them in the light most favorable to the Plaintiffs, the court is of the opinion that the Plaintiffs' EMTALA claims may be supported by some set of facts consistent with the

allegations stated in the second amended complaint. The allegations in the Plaintiffs' second amended complaint assert that the Medical Center's medical screening examinations were not performed in an equitable manner with respect to Stowe, "who was experiencing the same symptoms as other patients but who was not provided the same diagnostic procedures, allegedly because of his uninsured status." *Southard v. United Regional Health Care System, Inc.*, 2006 WL 1947312, *3 (N.D. Tex. 2006). The second amended complaint "further alleges that [the Medical Center] failed to stabilize [Stowe's] medical condition before discharging him, despite knowing of his condition and that his condition would materially deteriorate if he were released." *Id*.

    As aptly noted by the *Southard* court:

> To the extent that Defendant[s] argue[ ] that these allegations are unsubstantiated and thereby warrant dismissal, [ ] Defendant[s] fail[ ] to recognize that a Rule 12(b)(6) motion merely tests the adequacy of the pleadings and not Plaintiffs' ultimate evidentiary burden. If later, after an adequate time for discovery, Plaintiffs fail to substantiate these allegations with admissible evidence, then Defendant[s] would be entitled to summary judgment on their EMTALA claim. At this early stage, however, dismissal would be inappropriate for lack of evidence.

*Southard*, 2006 WL 1947312 at *3. Accordingly, the Defendants' FED. R. CIV. P. 12(b)(6) motions to dismiss should be denied. Likewise, since the Plaintiffs' EMTALA claims remain, the court is vested with jurisdiction. As such, the Defendants' FED. R. CIV. P. 12(b)(1) motions to dismiss should be denied as well.

## CONCLUSION

    Based on the foregoing, Defendants Vudhi V. Slabisak, M.D. and North Texas Orthopaedic & Spine, P.A.'s dispositive Rule 12 motion to dismiss and, subject thereto, motion to transfer venue

(docket entry #29)[1] is hereby **DENIED**. Further, Defendant Medical Center of McKinney's dispositive Rule 12b motion to dismiss (docket entry #35) is **DENIED** as well.

 IT IS SO ORDERED.

 **SIGNED this the 20th day of March, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

---

[1] In their alternative motion to transfer venue, Slabisak and North Texas Orthopaedic & Spine, P.A. sought a transfer of this case from the Marshall Division to the Sherman Division. On July 5, 2007, the Honorable T. John Ward transferred this case to the Sherman Division. Accordingly, that portion of the Defendants' motion seeking a transfer is **MOOT**.